UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00905-GNS-CHL

ZELPHIA DIANE OWENS                                                                 PLAINTIFF

v.

ARVATO DIGITAL SERVICES                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (DN 15). The motion is ripe for adjudication. For the reasons detailed below, the motion is **GRANTED**.

### I.     BACKGROUND

On October 31, 2008, Plaintiff Zelphia Diane Owens ("Owens") and her then-husband, William M. Bastin, Jr., filed for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Western District of Kentucky, Case No. 08-34881-THF. (Def.'s Mot. Summ. J. Ex. 1, DN 15-1). In December 2008, the Bankruptcy Court issued an order of confirmation directing Owens and her husband to make weekly payments of $61.00 to their creditors for 60 months. (Def. Mot. Summ. J. Ex. 2, DN 15-2).

At the time of filing of the Chapter 13 petition, Owens was employed as a sorter in the Warehouse of Defendant Arvato Digital Services, LLC ("Arvato") in Louisville, Kentucky. (Notice of Removal Ex. A, ¶ 4, DN 1-2 [hereinafter Compl.]). On December 20, 2010, Owens was terminated due to a reduction in force. (Compl. ¶¶ 19-22). She was the only woman and the oldest in her unit at the time of her termination. (Compl. ¶ 17). On November 14, 2011, Owens'

counsel sent a letter to Arvato alleging that she was terminated due to her gender, age, and disability in violation of the Kentucky Civil Rights Act. (Def.'s Mot. Summ. J. Ex. 3, at 5, DN 15-3). She demanded reinstatement to her previous position in the company, back pay and an additional lump sum to compensate her for the "pain and suffering, mental anguish, and trauma" she suffered. (Def.'s Mot. Summ. J. Ex. 3, at 6). Owens did not amend her Chapter 13 bankruptcy filings to advise the Bankruptcy Court of any claims relating to her termination before or after the demand letter was sent.

On December 12, 2011, Owens and her husband moved to convert their Chapter 13 bankruptcy into a Chapter 7 bankruptcy. (Def.'s Mot. Summ. J. Ex. 4, DN 15-4). On the same day, she and her husband filed a petition for Chapter 7 bankruptcy. (Def.'s Mot. Summ. J. Ex. 5, DN 15-5). The Chapter 7 petition required Owens to list all assets and personal property, however, Owens did not disclose any claims she had against Arvato in this filing. Instead, Owens marked "NONE" in response to Item No. 21 on Schedule B of the Chapter 7 petition, which asked Owens to identify any "[o]ther contingent and unliquidated claims of every nature . . . ." and to "[g]ive estimated value of each." (Def.'s Mot. Summ. J. Ex. 5, at 22). An order of discharge was entered on March 20, 2012, by the Bankruptcy Court pursuant to 11 U.S.C. § 727 for all listed dischargeable debts. (Def.'s Mot. Summ. J. Ex. 6, DN 15-6).

Owens initiated this action in Jefferson Circuit Court on December 4, 2015. The Complaint alleges that she was unlawfully terminated because of her gender, age, and disability in violation of the Kentucky Civil Rights Act. (Compl. ¶ 32). Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Arvato removed the case from Jefferson Circuit Court to this Court. (Notice of Removal, DN 1). On May 26, 2016, Arvato moved for summary judgment of all claims. (Def.'s

Mot. Summ. J. DN 15). Owens responded to the motion on June 20, 2016 and Arvato replied on July 8, 2016. (Pl. Resp. Def.'s Mot. Summ. J., DN 16; Def.'s Reply Mot. Summ. J., DN 17).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between Owens and Arvato and the amount in controversy exceeds the sum of $75,000.00.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys.*, Inc., 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id.* (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the Court views the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-moving party must present facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by

"showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

"Pursuant to Section 521 of the Bankruptcy Code, a debtor is required to file 'a schedule of assets and liabilities[,] a schedule of current income and current expenditures[,][and] a statement of the debtor's financial affairs . . . .'" *Schultz v. Hydro-Gear Ltd. P'ship*, No. 5:12-CV-10, 2012 WL 3527068, at *4 (W.D. Ky. Aug. 15, 2012) (alterations in original) (citing 11 U.S.C. § 521(a)(1)(B)). "It is well-settled that a cause of action is an asset that must be scheduled pursuant to § 521." *Id.* (citing *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)). "Additionally, [t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). *See also Harrah v. DSW Inc.*, 852 F. Supp. 2d 900, 903 (N.D. Ohio 2012) (noting the "bankruptcy estate includes property that the 'debtor acquires after the commencement of the case but before the case is closed . . . .'" (quoting 11 U.S.C. §1306(a)(1))). The disclosure requirement is at the heart of the bankruptcy system and is the "price debtors pay for receiving the bankruptcy discharge." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (internal quotation marks omitted) (quoting *In re Colvin*, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003)).

In the bankruptcy context, the Sixth Circuit has held that three elements must be met for judicial estoppel: (1) a party asserts a position that is contrary to one that party has asserted under oath in a prior proceeding; (2) the prior court adopted the contrary position either

4

preliminarily or as part of a final disposition of the case; and (3) the omission was not due to mistake or inadvertence.[1]  *White v. Wyndham Vacation Ownership, Inc*., 617 F.3d 472, 478 (6th Cir. 2010) (citation omitted).  "The Sixth Circuit has stressed that the doctrine of judicial estoppel is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship."  *Schultz*, 2012 WL 3527068, at *4 (internal quotation marks omitted) (quoting *Browning*, 283 F.3d at 776).  Here, Arvato argues the doctrine of judicial estoppel bars Owens from asserting her claims against Arvato in this present action because she neither disclosed these claims in her Chapter 13 or Chapter 7 bankruptcy petitions, nor did she amend her petitions to reflect these claims.

> A. **Owens has asserted a position that is contrary to the position she asserted in the bankruptcy proceedings and the Bankruptcy Court adopted the contrary position.**

The first two elements of judicial estoppel are undisputedly met.  As to the first prong, Owens asserts a position in this litigation that is inconsistent to those she asserted under oath in the bankruptcy proceedings.  The Sixth Circuit has held that pursuing a cause of action which was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support the application of judicial estoppel.  *See, e.g., Eubanks*, 385 F.3d at 898; *Browning*, 283 F.3d at 775; *Lewis*, 141 F. App'x at 425.  There is no question that Owens failed to disclose her claims against Arvato to the Bankruptcy Court. Owens did not amend her Chapter 13

---

[1] Ordinarily, the substantive law of the forum state would apply in a diversity action. See *Himmel v. Ford Motor Co*., 342 F.3d 593, 598 (6th Cir. 2003).  "The doctrine of judicial estoppel raises questions of whether it is best classified as substantive or procedural and, hence, whether a federal court sitting in diversity should apply state or federal law."  *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc*., 12 F. Supp. 2d 760, 771 (M.D. Tenn. 1998) (citation omitted).  The Sixth Circuit has determined that the doctrine raises primarily federal interests, and that federal law should therefore control the issue of judicial estoppel.  *See Edwards v. Aetna Life Ins. Co*., 690 F.2d 595, 598 n.4 (6th Cir. 1982) (noting that "federal courts must be free to develop principles that most adequately serve their institutional interests."  (citations omitted)).

bankruptcy petition after she lost her job to reflect the claims that arose from her termination, despite her continuing duty to make this amendment. *See Schultz*, 2012 WL 3527068, at *4. Additionally, she omitted the claims on her subsequent Chapter 7 bankruptcy petition filed almost a year after her termination and one month after the letter threatening litigation was sent to Arvato. Owens' pursuit of her claims against Arvato in the instant action is, therefore, directly contrary to her sworn bankruptcy petition, in which she represented, under oath and penalty of perjury, that she had no contingent or unliquidated claims of any nature. *See White*, 617 F.3d at 478.

As to the second element necessary for judicial estoppel, the Bankruptcy Court adopted the contrary position created by Owens' omission of her claims. "[T]he Sixth Circuit has ruled that 'when a bankruptcy court—which must protect the interests of all creditors—approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient judicial acceptance to estop the party from later advancing an inconsistent position.'" *Scisney v. Gen. Elec. Co.*, No. 4:14-CV-00008, 2015 WL 7758542, at *4 (W.D. Ky. Dec. 1, 2015) (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 473(6th Cir. 1988)). The Bankruptcy Court for the Western District of Kentucky confirmed Owens' Chapter 13 plan on December 11, 2008, and discharged her debts in reliance on the representations made in Owens' Chapter 7 petition. (Def.'s Mot. Summ. J. Ex. 2; Def.'s Mot. Summ. J. Ex. 6). Thus, when the Bankruptcy Court confirmed the plan and entered the order of discharge, it adopted the contrary position taken by Owens—i.e., that she had no claims against Arvato.

The first two threshold requirements for judicial estoppel have been met. However, judicial estoppel will not be appropriate if there was a mistake or inadvertence in the filing of the bankruptcy petition.

### B. Owens' omission in the bankruptcy proceedings did not result from mistake or inadvertence.

In determining if there was a mistake or inadvertence by the debtor the court will consider: (1) if the debtor lacked knowledge of the factual basis of the undisclosed claims; (2) if the debtor had a motive for concealment; and (3) if the evidence indicates an absence of bad faith. *Id.*; *Eubanks*, 385 F.3d at 895.

#### 1. *Owens did not lack knowledge of the underlying claim.*

Owens knew of the factual basis of her claims on the day she was terminated from her position at Arvato. "[T]he debtor need not know all the facts or even the legal basis for the cause of action rather, if the debtor has enough information . . . to suggest that it may have a possible cause of action, then it is a known cause of action such that it must be discharged." *Williams v. Saxon Mortg. Servs., Inc.*, No. 13-10817, 2014 WL 765055, at *9 (E.D. Mich. Feb. 26, 2014) (internal quotation marks omitted) (quoting *In re Coastal Plains*, 179 F.3d at 210). In the Complaint, she asserts that on the date of her termination, December 20, 2010, she knew that she was the only woman and the eldest in her unit. (Compl. ¶¶ 5-6). She also knew that her termination was not based on poor job performance. (Compl. ¶ 24). Thus, on the date her employment at Arvato ended, Owens knew the factual basis for her employment discrimination claim.

In addition to her awareness of the factual basis for her claims, Owens also knew the *legal* basis of her claims as her attorney sent a letter threatening litigation to Arvato in November 2011, one month before she filed the Chapter 7 petition. Although knowing the legal grounds for her grievance is not required, Owens' documented possession of this information weakens her cause against judicial estoppel. *See Scisney*, 2015 WL 7758542, at *5 ("Even if [p]laintiff was

7

unaware of the legal significance of his claims at the time, he certainly was aware of their factual bases . . . . ").

Owens argues that she did not have knowledge of the claims at the time of filing the Chapter 13 petition in December 2008 because she was not terminated from her employment until December 2010. (Pl.'s Resp. Def.'s Mot. Summ. J. 6). This misses the point: Owens had a continuing duty to update her petition upon acquisition of further assets or financial changes. *See Schultz*, 2012 WL 3527068, at *4 ("[T]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." (quoting *In re Coastal Plains*, 179 F.3d at 208)). *See also Harrah*, 852 F. Supp. 2d. at 903 ("[T]he bankruptcy estate includes property that the 'debtor acquires after the commencement of the case but before the case is closed . . . .'" (quoting 11 U.S.C. §1306(a)(1))). Even disregarding the failure to amend the Chapter 13 petition, Owens still omitted her claim against Arvato in the Chapter 7 petition. When the petition was filed, Owens was clearly aware of the facts and legal basis for her claims considering the demand letter sent by her attorney just a month before. The undisputed facts establish that Owens had knowledge of the factual basis of the undisclosed claim and she therefore fails the first consideration of the mistake/inadvertence analysis.

> **2. The Sixth Circuit presumes that it is in all Chapter 13 petitioners' interest to minimize income and assets, thus a motive to conceal can be inferred.**

Owens asserts there is no evidence indicating that she acted with a motive to conceal and that she merely made an innocent mistake when not disclosing her potential claim. (Pl.'s Resp. Def.'s Mot. Summ. J. 6). However, as the Sixth Circuit has recognized, "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis*, 141 F. App'x at 426. Therefore, "[a] motive to conceal can be inferred from the sole fact that a plaintiff knew of a

8

claim and did not disclose it, as it stems from the idea that if the debtor's claim became a part of his bankruptcy estate, then the proceeds from it could go towards paying the debtor's creditors instead of the debtor. *Scisney*, 2015 WL 7758542, at *18. *See also Dockery v. Countrywide Home Loans, Inc.*, No. 3:09-CV-00821-TBR, 2010 WL 2667376, at *3 (W.D. Ky. July 1, 2010). Beyond her own conclusory statement that she acted with no motive to conceal, Owens has offered no affirmative evidence to rebut the Sixth Circuit's presumption that a motive to conceal exists in chapter 13 proceedings. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." (citations omitted)).

Owens argues that her lack of motive to conceal can be inferred because she had no knowledge or reason to believe that her possible future lawsuit was an actual asset of her estate. (Pl.'s Resp. Def.'s Mot. Summ. J. 6). However, a "[p]laintiff's assertion that she was 'simply unaware' of the need to amend her bankruptcy schedules to reflect these claims does not preclude the application of judicial estoppel." *Schultz*, 2012 WL 3527068, at *18 (citations omitted). "Though other plaintiffs have argued that they were unaware of their duties or did not understand the questions on the personal property schedules, '[i]t does not appear that any court has accepted ignorance of the law as an excuse for a party's failure to comply with the requirement of full disclosure.'" *Scisney*, 2015 WL 7758542, at *7 (citing *Harrah*, 852 F. Supp. 2d at 907). Moreover, Owens was represented by counsel in both her employment matter and her bankruptcy. Thus, Owens' assertion that she was not aware her claims were assets is not enough to rebut the Sixth Circuit presumption that she had a motive to conceal. This consideration weighs against Owens' assertion that her omission was due to a mistake or inadvertence.

9

> **3.** *The evidence indicates Owens acted with bad faith because she has failed to make any attempts to apprise the Bankruptcy Court of the omission in her petition.*

Despite the Owens' knowledge of the underlying claim and her motive to conceal, a determination that she acted "in the absence of bad faith" will prevent judicial estoppel from barring the claim. *Scisney*, 2015 WL 7758542, at *6 (internal quotation marks) (citing *Eubanks*, 385 F.3d at 898). As the Sixth Circuit has noted:

> [E]ven if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional. In such a case, the equitable principles governing judicial estoppel do not support its application.

*Lewis*, 141 F. App'x at 426.

In determining whether there was an absence of bad faith, it is significant if the debtor made "constant affirmative" efforts to inform the trustee and the bankruptcy court of the claim "through correspondence, motions, and status conference requests . . . ." *Id*. at 426 (internal quotation marks omitted) (quoting *Eubanks*, 385 F.3d at 899 n.3). In *Eubanks*, the Sixth Circuit held that the plaintiff did not act in bad faith where the plaintiff made numerous efforts to apprise the bankruptcy court of her omitted cause of action. In that case, the Court explained that the plaintiff:

> (1) notified the bankruptcy trustee of the claim during a meeting and the trustee requested all of the documents regarding the claim; (2) asked the trustee on several occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) moved the bankruptcy court for a status conference on the issue of the lender liability claim; (4) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their original bankruptcy petition to add the lender liability action to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel.

10

*Id*. (citing *Eubanks*, 385 F.3d at 895-97). The Sixth Circuit held that the plaintiff's actions demonstrated that the omission was in good faith and inadvertent given the "constant affirmative" efforts. *Eubanks*, 385 F.3d at 899 n.3.

Conversely, the Sixth Circuit in *Lewis* held that the plaintiff's efforts were not enough to establish that the plaintiff acted in good faith. In *Lewis*, the plaintiff made no amendments or filings with the bankruptcy court to notify the court of her employment discrimination cause of action. *Lewis*, 141 F. App'x at 426. The plaintiff did submit an affidavit in which she claimed to have spoken with someone in the bankruptcy trustee's office about her claims and what she should do with the proceeds of her lawsuit, but did not indicate at what stage of the proceedings this conversation occurred. *Id*. at 422. Under these circumstances, the Sixth Circuit held that the minimal efforts to inform the bankruptcy trustee of the plaintiff's lawsuit did not establish that her omissions were inadvertent. *Id*. at 427. *But see Stephenson v. Malloy*, 700 F.3d 265, 275 (6th Cir. 2012) (holding that plaintiff did act in an absence of bad faith where at all times during the pendency of the bankruptcy proceeding he communicated openly with the trustee about his cause of action and repeatedly sought trustee's guidance as to how the litigation should be handled, although no amendments were made to the schedules until after the filing of the motion for summary judgment).

Owens made considerably less effort than the plaintiff in *Lewis*, which the Sixth Circuit held was insufficient to show a lack of bad faith. In this case, is undisputed that Owens has made no effort whatsoever to notify the Bankruptcy Court of her claims against her former employer. (Def.'s Reply to Mot. Summ. J. Ex. 1, DN 17-1). In fact, presently Owens still has neither filed any amendment or motion, nor has she claimed to have spoken with the bankruptcy trustee about her claims. Owens argues that judicial estoppel is inappropriate because at any

11

time she can reopen and amend her bankruptcy disclosures to include this suit. (Pl.'s Resp. Def.'s Mot. Summ. J. 6). However, under a bad faith analysis this would not matter, as the Court is to look at what Owens **has done**, not what she **may do** in the future to notify the Bankruptcy Court of the error in her petition. Owens has not shown that she acted without bad faith because she has established no efforts on her behalf to notify the Bankruptcy Court of her claims against Arvato.

Owens argues that she did not act in bad faith by purposefully concealing her claims because she relied on her then-husband's representation and understanding of the bankruptcy proceedings. (Pl.'s Resp. Def.'s Mot. Summ. J. 2). This argument is without merit. The Sixth Circuit has held that even when relying on the advice of an attorney to exclude a cause of action from the bankruptcy disclosures, a plaintiff's omission will still not be excused. *White*, 617 F.3d at 483-84. Even if the attorney made a "conscious decision" not to present that information to the bankruptcy court, the plaintiff is still "bound by the actions of [his or her] attorney." *Lewis*, 141 F. App'x 427-28 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 624, 633-32 (1962)). Considering the Sixth Circuit has rejected reliance on an attorney's advice as an excuse for omission, relying on the advice of a spouse would certainly not preclude judicial estoppel. Owens filed and signed her petitions for bankruptcy under penalty of perjury, declaring that the information contained therein was true and correct. (Def.'s Mot. Summ. J. Ex. 2, at 52; Def.'s Mot. Summ. J. Ex. 5, at 53). She cannot now assert that she did not know what was in the petitions as an excuse.

Finally, Owens argues that she did not understand her claims for non-monetary relief as an asset because in the prelitigation demand letter "she was looking to be reinstated at Arvato, not sue them." (Pl.'s Resp. Def. Mot. Summ. J. 6). This claim is contradicted by the undisputed

evidence in the record. In his November 14, 2011, letter, Owens' counsel demanded reinstatement of Owens to her previous employment position *in addition to* back pay and damages for "pain and suffering, mental anguish, and trauma which [Owens] ha[d] experienced by being unemployed." (Def.'s Mot. Summ. J. Ex. 3, at 6). Additionally, the letter concluded by stating that counsel "will recommend to [Owens] to file suit in Jefferson Circuit Court" if her demands were not met. Thus, Owens clearly was seeking monetary relief from Arvato.

Even if the letter only sought non-monetary relief, Owens was still be required to disclose her claims in the bankruptcy proceedings. In a recent case, this Court rejected the same argument regarding non-monetary relief:

> Lastly, Plaintiff has argued that judicial estoppel should not bar his undisclosed causes of action because he only sought non-monetary relief at the time of filing his petition. Other plaintiffs have argued that because their claims would produce no capital to pay the debtor's creditors, they did not need to be disclosed in the bankruptcy filings. This argument has proved unsuccessful as well. "[J]udicial estoppel is applicable even to [a plaintiff's] claims for injunctive relief" because knowledge about potential claims "may have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy." Therefore, even asserting that the claim was non-monetary in nature does not save it from the application of judicial estoppel.
>
> Here, the fact that Plaintiff claims that he was simply seeking non-monetary relief cannot hold. As seen, claims for non-monetary relief must be disclosed to the bankruptcy court just as any other claims.

*Scisney*, 2015 WL 7758542, at *8 (alterations in original) (internal citations omitted). Owens has failed to assert any affirmative evidence to demonstrate the absence of bad faith to avoid the doctrine of judicial estoppel. Therefore, summary judgment is proper.

## V. CONCLUSION

The undisputed proof in the record demonstrates that the elements of judicial estoppel are met. Owens has put forth no evidence to show that there was a mistake or inadvertence to preclude the application of judicial estoppel in this case. She had knowledge of the factual and

13

legal basis of her claims, possessed an inferred motive to conceal, and has not shown that she acted without bad faith. Thus, summary judgment for Arvato is proper as a matter of law.

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 15) is **GRANTED**.

**Greg N. Stivers, Judge**
**United States District Court**
December 7, 2016

cc: counsel of record